**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| XINRONG ZHUANG,                ) | |
|                           ) | |

XINRONG ZHUANG,             )

                      )

       Plaintiff,      )

                      )

       v.              )    Civil Action No.

                      )    09-12163-NMG

R. SAQUET, CITY OF BROCKTON and )

BROCKTON HOSPITAL,      )

                      )

       Defendants.     )

                      )

## MEMORANDUM & ORDER

**GORTON, J.**

Plaintiff Xinrong Zhuang ("plaintiff" or "Zhuang") brings this pro se medical malpractice and civil rights case based upon a 2006 incident in which he was allegedly improperly restrained for a medical evaluation and treated by Brockton Hospital. He alleges various civil rights violations against defendants Officer Robert Saquet ("Officer Saquet") of the Brockton Police, the City of Brockton ("the City") and Brockton Hospital ("the Hospital") (collectively, "defendants") and also alleges medical malpractice by the Hospital.

Pending before the Court are two motions for summary judgment, one of which was filed by the Hospital and the other by Officer Saquet and the City. Also pending are the Hospital's motions to dismiss for failure to prosecute and to quash plaintiff's subpoena of its keeper of records.

-1-

## I.  **Background**

The following facts are based upon the allegations in plaintiff's Complaint, the affidavits and exhibits submitted by the City and Officer Saquet in support of their motion for summary judgment and plaintiff's affidavits submitted in opposition to the motions for summary judgment.

On December 22, 2006, plaintiff called the Brockton Police Department and told them that his son was using a knife to fix the kitchen sink.  Officers of the Brockton Police Department, including Officer Saquet, were dispatched to plaintiff's home. Upon arriving at the scene, Officer Saquet, a 16-year veteran of the Brockton Police Department, spoke with plaintiff's 19-year-old son, Yuxan Zhuang.  Plaintiff's son stated that his father had injured his head in a motor vehicle accident in February, 2006 and had been quick to anger and more paranoid since his accident.  Officer Saquet observed the plaintiff for ten minutes and avers in an affidavit that Zhuang appeared "agitated, aggressive, paranoid [and] in an altered mental state" and began to break things in his apartment.  Plaintiff, on the other hand, contends that he was standing peacefully in his yard when the police arrived.

Based upon his observations, Officer Saquet concluded that plaintiff was suffering from a mental illness and posed a substantial threat to the physical safety of himself and his

family.  He called for a "multiservice transport" including fire
department personnel and an ambulance to take plaintiff to the
Brockton Hospital Emergency Room for psychiatric evaluation.
Lieutenant Daniel Santry ("Lieutenant Santry") and Firefighters
Scott Rubeski and William Coward responded to his call along
with ambulance medics affiliated with a City contractor.
Officer Saquet, the firefighters and the medics all advised
plaintiff that he would benefit from going to the hospital for
evaluation and treatment.

Both Officer Saquet and Lieutenant Santry explain that, at
that point, plaintiff became agitated and attempted to flee the
scene.  Lieutenant Santry observed plaintiff's elderly mother
jump on plaintiff's back to stop him from fleeing and saw
plaintiff reach for what he believed to be a rock.  Lieutenant
Santry believed that plaintiff intended to use the rock as a
weapon to fend off his mother.  Plaintiff denies this and notes
that his yard is covered with grass, not rocks.

Lieutenant Santry has 17 years of work experience with the
Brockton Fire Department and 14 years as an emergency medical
technician.  Based upon his work experience and observations, he
concluded that plaintiff appeared to be suffering from mental
illness and required immediate emergency psychiatric evaluation
and treatment.  He conveyed that belief to Officer Saquet, who
agreed that restraint was necessary based upon <u>Brockton Police</u>

<u>Department Policy, Procedure and Guidelines</u> that state that in emergency situations where a physician is unavailable a police officer may restrain a person and apply for civil commitment on his or her behalf if the officer believes that failing to do so would create a likelihood of serious harm.

Lieutenant Santry removed plaintiff's mother from plaintiff's back and all three firefighters helped to hold plaintiff still so that Officer Saquet could handcuff him. According to plaintiff, "four or five firefighters" knocked him down in his yard. Once restrained, plaintiff was transported by ambulance to the Brockton Hospital Emergency Room for evaluation and treatment. Officer Saquet removed plaintiff's handcuffs upon plaintiff's arrival at the emergency room.

Plaintiff claims that he was initially locked in a small room at the Hospital without water to drink for several hours and then detained against his will for several days without being provided with an interpreter or an opportunity to consult with an attorney. Medical records submitted by the City and Officer Saquet reveal that, during the afternoon of December 22, plaintiff was evaluated by a Brockton Hospital physician who diagnosed him with a mental illness as defined in 104 C.M.R. § 27.05(1). Plaintiff also signed an Application for Care and Treatment on a Conditional Voluntary Basis, dated December 22, 2006, in which he agreed to receive treatment for his mental

illness at Brockton Hospital. He claims that Dr. Alexander I. Lipin gave him the choice of signing that form or having such treatment forced upon him and states that he signed the form but did not read or understand its contents.

Plaintiff alleges that, while he was hospitalized, he suffered from elevated blood pressure and an abnormal EKG for which he did not receive treatment. He asserts that at around 6:00 p.m. on December 22, his blood pressure was 160/122 and his heart rate was 127 and later that evening his blood pressure was 162/99 and his heart rate was 112. His account appears to be corroborated by the marginally-legible, handwritten hospital records submitted by Officer Saquet and the City in support of their motion for summary judgment.[1]

Plaintiff claims that he almost died and that he suffered a heart attack and stroke as a result of his treatment by defendants. There is no evidence in the record to corroborate his claims. A Psychiatric Admissions Assessment completed by Camille Morgan, RN, in the early morning of December 23 notes, however, that plaintiff informed her that he continued to suffer

---

[1] While the Hospital presumably has access to the same records, it did not submit them in support of its motion for summary judgment. Indeed, the Hospital submitted no evidentiary support for its motion. Its statement of material facts merely summarizes plaintiff's allegations and recounts the lengthy motion practice during discovery in this case.

from paranoia and back and neck pain and was unable to work after his motor vehicle accident in February, 2006.

## II.  **Procedural History**

Plaintiff filed his complaint in December, 2009.  In February, 2010, this Court stayed proceedings and referred the case to a Massachusetts trial court to convene a medical malpractice tribunal pursuant to M.G.L. ch. 231, § 60B.  In May, 2012, the tribunal found in the Hospital's favor on the grounds that plaintiff had failed to file an offer of proof.

The case was remanded to this Session.  Over the following 18 months, the parties engaged in extensive motion practice relating to discovery before Magistrate Judge Marianne B. Bowler.  Upon Magistrate Judge Bowler's recommendation, this Session denied several motions to dismiss as a sanction for plaintiff's failure to comply with orders compelling him to produce certain discovery.  In January, 2014, Magistrate Judge Bowler allowed plaintiff's request to extend the deadlines to complete discovery and to retain the services of an expert witness until January 31, 2014 but noted that no further continuances would be allowed.

The Court has since denied plaintiff's motion to amend his Complaint to add his mother as a plaintiff, his motion to reconsider that ruling and his several motions to compel discovery and to extend discovery deadlines.

## III. **Motions for Summary Judgment**

### A. **Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co._, 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc._, 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett_, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v.

Steeves, 994 F.2d 905, 907 (1st Cir. 1993). The non-moving party may not, however, rest upon "conclusory allegations, improbable inferences and unsupported speculation." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Moreover, a pro se litigant is not excused from complying with the standard of Fed. R. Civ. P. 56. See Posadas de P.R., Inc. v. Radin, 856 F.2d 399, 401 (1st Cir. 1988).

**B.  Motion for Summary Judgment by Officer Saquet and City of Brockton**

Plaintiff's Complaint alleges that the police violated his civil rights during his "arrest" by 1) refusing to let him call an attorney (Count 1), 2) arresting him without cause (Count 2) and 3) using excessive force (Counts 3 and 4). The Court agrees with the City and Officer Saquet that it is appropriate to construe plaintiff's claims as alleging violations of the Fourth, Fifth and Sixth Amendments of the United States Constitution and the Massachusetts Civil Rights Statute ("MCRA"), M.G.L. ch. 12, §§ 11H-11I. For the reasons that follow, Officer Saquet and the City are entitled to summary judgment on all of the counts alleged against them.

### 1. Legal Standards

Claims for violations of federal civil rights are actionable in suits brought pursuant to the Federal Civil Rights Act, 42 U.S.C. § 1983. Section 1983 affords individuals a cause of action against persons who, while acting under color of law, deprive them of a right or privilege secured by the Constitution or laws of the United States. Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 621 (1st Cir. 2000).

To the extent that plaintiff's claims arise under state law, he must prove that defendants interfered with or attempted to interfere with his exercise or enjoyment of a state or federal right by threats, intimidation or coercion. Currier v. Nat'l Bd. of Med. Exam'rs, 965 N.E.2d 829, 837-38 (Mass. 2010) (citing Buster v. George W. Moore, Inc., 793 N.E.2d 399, 408 (Mass. 2003)).

### 2. Claims Against the City

A municipality cannot be sued under the MCRA. Kelley v. LaForce, 288 F.3d 1, 11 n.9 (1st Cir. 2002) (citing Howcroft v. City of Peabody, 747 N.E.2d 729, 744 (Mass. App. Ct. 2001)). Therefore, any claim against the City must arise under federal law and be brought pursuant to § 1983.

The City cannot be held liable under § 1983 based solely upon the wrongful conduct of Officer Saquet and other law enforcement officers. Instead, plaintiff must prove that the

-9-

City's unconstitutional policies, practices and procedures caused its employees or agents to violate his civil rights. Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978). Plaintiff does not challenge the constitutionality of the Brockton Police Department Policy, Procedure and Guidelines with respect to restraining mentally ill individuals. Nor does he allege, much less establish, that Brockton Police Officers acted pursuant to another unconstitutional policy or practice or that the City failed to train its officers properly. Id.; City of Canton v. Harris, 489 U.S. 378, 389 (1989). As a result, his claims against the City will be dismissed.

### 3. Claims Against Officer Saquet

#### a. Official Capacity

To the extent that plaintiff sues Officer Saquet in his official capacity, his claims fail as a matter of law for the same reasons that his claims against the City are not viable. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (explaining that a plaintiff must establish that the policies or customs of a government entity violate federal law in order to prevail in an action against an agent sued in his or her official capacity).

#### b. Personal Capacity/Qualified Immunity

Any claims against Officer Saquet in his personal capacity, moreover, are barred by the doctrine of qualified immunity. Qualified immunity protects government officials who perform

discretionary functions from liability for civil damages when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The doctrine applies equally to claims arising under § 1983 and the MCRA. Howcroft, 747 N.E.2d at 746.

The First Circuit examines two factors when considering whether a defendant is entitled to qualified immunity:

> (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendant's alleged violation.

Maldonado v. Fortunes, 568 F.3d 263, 269 (1st Cir. 2009) (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)).  A right is "clearly established" if 1) the contours of the right are sufficiently clear so as to put a reasonable official on notice that he was violating that right and 2) based on the facts of the particular case at hand, "a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." Id. (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987) and Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam)).

The Court will consider whether Officer Saquet is entitled to qualified immunity with respect to plaintiff's claims that he

was unlawfully restrained, subjected to excessive force and denied the right to counsel, seriatim.

## i.    Unlawful Restraint

The Fourth Amendment protects citizens against unreasonable searches and seizures, including seizures conducted pursuant to involuntary civil commitment proceedings for persons suffering from mental illness. McCabe v. Life-Line Ambulance Serv., Inc., 77 F.3d 540, 544 (1st Cir.), cert. denied, 519 U.S. 911 (1996). Nonconsensual, warrantless seizures are presumptively unreasonable under the Fourth Amendment. Skinner v. Ry. Labor Execs. Ass'n, 489 U.S. 602, 619 (1989).  The Supreme Court has recognized an exception to that general rule, however, in cases involving "special needs". Griffin v. Wisconsin, 483 U.S. 868, 873 (1987).

The First Circuit Court of Appeals has held that cases involving the restraint of a mentally ill individual who presents a danger to himself and others fall within the "special needs" exception. Ahern v. O'Donnell, 109 F.3d 809, 817 (1st Cir. 1997); McCabe, 77 F.3d at 546-47.  It has specifically examined the standard for seizures conducted pursuant to a Massachusetts law that provides that

> in an emergency situation, if a physician, qualified
> psychologist, qualified psychiatric nurse mental
> health clinical specialist or licensed independent
> clinical social worker is not available, a police
> officer ... who believes that failure to hospitalize a

person would create a likelihood of serious harm by
reason of mental illness may restrain such person and
apply for the hospitalization of such person for a 3-
day period at a public facility or a private facility
authorized for such purpose by the department.

M.G.L. ch. 123, § 12(a).

The First Circuit has held that a seizure pursuant to that

provision requires a showing of probable cause, which it has

defined as

circumstances warranting a reasonable belief that the
person to be seized ... [has] a mental health
condition threatening serious harm to himself or
others.

Ahern, 109 F.3d at 817.  Such probable cause must exist at the

moment the arrest was made and be based on the firsthand

knowledge of the arresting officer or reasonably trustworthy

information provided by a third party.  Id. (citing Beck v. Ohio,

379 U.S. 89, 91 (1964)).

While this case presents a close call, the Court is

satisfied that Officer Saquet had probable cause to believe that

plaintiff had a mental health condition that posed a risk of

serious harm to others at the time he decided to restrain

plaintiff.  That conclusion was properly based upon Saquet's

observations of plaintiff's agitated, paranoid and aggressive

state and corroborated by the observations of Lieutenant Santry

and the statement by plaintiff's son that plaintiff had seemed

increasingly paranoid since his accident earlier that year.  On

-13-

the other hand, his report that plaintiff was "breaking things in his apartment" does not necessarily suggest that plaintiff presented a serious risk to himself or others.  Furthermore, it is unclear from the record whether Lieutenant Santry told Officer Saquet that Santry had observed plaintiff reaching for a rock that he believed plaintiff sought to use as a weapon.

Nevertheless, the Court finds that Officer Saquet had probable cause to believe that plaintiff was suffering from a mental illness that placed Zhuang and his family at risk of serious harm if he was not restrained.  Even if the decision to restrain plaintiff was unreasonable, moreover, a reasonable officer in the position of Officer Saquet would not have understood his conduct to violate the Fourth Amendment.  As a result, Officer Saquet is entitled to qualified immunity as to plaintiff's claims of unlawful restraint in Count 2.

### ii.  Excessive Force

In order to establish that Officer Saquet used excessive force in violation of the Fourth Amendment, plaintiff must show that Saquet "employed force that was unreasonable under the circumstances." Morelli v. Webster, 552 F.3d 12, 23 (1st Cir. 2009) (citing Graham v. Connor, 490 U.S. 386, 396 (1989) and Asociación de Periodistas de P.R. v. Mueller, 529 F.3d 52, 59 (1st Cir. 2008)).  Relevant factors include the extent to which plaintiff presented an immediate threat to the safety of the

officers or others and whether he actively resisted restraint or attempted to flee. Id. (citing Graham, 490 U.S. at 396).

Even if a jury could find that Officer Saquet used unreasonable force based upon plaintiff's assertions that he was knocked down in his yard by four to five firefighters and held down by all of them, qualified immunity is still warranted.  The level of force alleged by Zhuang is not so clearly excessive as to preclude a qualified immunity defense. Id. at 24.  Multiple officers have corroborated that plaintiff was actively resisting restraint and attempting to flee the scene.  Moreover, plaintiff has put forward no evidence of any injury resulting from the alleged use of force beyond his unsupported claim that the use of force injured his heart.  Under the circumstances, Officer Saquet is entitled to qualified immunity with respect to Counts 3 and 4 of the Complaint.

### iii. Denial of Right to Counsel

Plaintiff also alleges that the police "refused to let [him] have or call an attorney" when he was "handcuffed and arrested".  He was not a defendant in a criminal prosecution or a party to a criminal proceeding, however, and therefore had no Fifth or Sixth Amendment right to consult with an attorney prior to his transport to the Brockton Hospital.  Because plaintiff has failed to state a constitutional violation, Officer Saquet is entitled to qualified immunity with respect to Count 1.

**C.  Motion for Summary Judgment by Brockton Hospital**

The Hospital has moved to dismiss the claims against it on the grounds that 1) the Hospital is not a state actor and therefore cannot be held liable for constitutional violations under § 1983 and 2) plaintiff cannot prove his medical malpractice claim without expert testimony.

**1.  Federal Claims**

To the extent that plaintiff's claims against the Hospital arise under federal law, he has failed to show that the Hospital, which was a private entity, acted under the color of state law for the purposes of § 1983.

The First Circuit applies three distinct tests to determine if a private entity may be held liable as a state actor under § 1983.  The "state compulsion" test asks whether the state "has exercised coercive power or has provided such significant encouragement" that the challenged conduct by the private entity must be deemed to be that of the state. Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 5 (1st Cir. 2005) (citing Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)).  The "nexus/joint action test" provides that a private entity can be treated as a state actor where the totality of the circumstances reveal that the state has

> so far insinuated itself into a position of
> interdependence with the private party that it was a
> joint participant in the challenged activity.

Id. (quoting Bass v. Parkwood Hosp., 180 F.3d 234, 242 (5th Cir. 1999)). Finally, a private entity may be treated as a state actor under the "public function test" if it performs a public function that has been "traditionally the exclusive prerogative of the state." Id. (quoting Blum, 457 U.S. at 1005).

Based upon the subject tests, the First Circuit has consistently held that private hospitals are not state actors in involuntary commitment cases. See Rockwell v. Cape Cod Hosp., 26 F.3d 254 (1st Cir. 1994); Estades-Negroni, 412 F.3d at 1 (1st Cir. 2005). For instance, in Rockwell v. Cape Cod Hospital, which also involved a hospital located in Massachusetts, the First Circuit found that the state compulsion test was not met because M.G.L. ch. 123, § 12 "neither compels nor encourages involuntary commitment." Rockwell, 26 F.3d at 258. With respect to the nexus/joint action test, it found that receipt of Medicare funds by the hospital did not create the necessary interdependence with the state. Id. Finally, it found that the public function test was not met because the history of the treatment of the mentally ill in Massachusetts demonstrates that involuntary commitment has never been the exclusive prerogative of the Commonwealth. Id. at 258-60.

Plaintiff does not attempt to distinguish his case from Rockwell and, indeed, much of the same reasoning appears to be

applicable here.  Furthermore, even if the Court assumes that 1) plaintiff's commitment was involuntary notwithstanding the fact that he signed the voluntary commitment form and 2) the Brockton Police Department is a state actor and its act of restraining and transporting plaintiff to the Hospital encouraged the involuntary restraint of plaintiff, the encouragement was not so significant as to justify treating the Hospital as an arm of the state under the state compulsion test.  Officer Saquet removed plaintiff's handcuffs upon his arrival at the Hospital and did not apply to have plaintiff involuntarily committed.  Instead, based upon the facts alleged by plaintiff, he was instructed to sign the voluntary commitment form by a Hospital employee. Under the circumstances, <u>Rockwell</u> is controlling and the Hospital is not a state actor for the purposes of § 1983.

### 2.    State Claims

Plaintiff states two potential state law claims against the Hospital: 1) violation of his civil rights under the Massachusetts Civil Rights Statute ("MCRA") and 2) medical malpractice.

### a.    Supplemental Jurisdiction

As an initial matter, the Court must decide whether to retain jurisdiction over the state law claims given that all federal claims against the Hospital will be dismissed.  Although the plaintiff claims that his action is founded in diversity

-18-

under 28 U.S.C. § 1332 and the parties have not briefed the jurisdictional issue, all evidence suggests that plaintiff and the Hospital are both Massachusetts domiciliaries. Therefore, the Court may decide the state law claims only through an exercise of supplemental jurisdiction under 28 U.S.C. § 1367(c)(3), which provides that federal courts have discretion to continue to exercise supplemental jurisdiction over claims arising in state law after all related federal claims are dismissed.

The First Circuit has explained that a court should consider factors such as comity, judicial economy and fairness in deciding whether to retain jurisdiction over remaining state law claims. Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996) (citations omitted). The inquiry is fact-specific and pragmatic but the First Circuit has generally approved of retaining jurisdiction where discovery has closed, the summary judgment record is complete and the state claims are interconnected with the federal claims. Id.

This case presents a close call but the Court concludes that dismissal of the state law claims is unwarranted. Discovery has closed, trial is imminent, and it would be unfair to the Hospital to allow plaintiff a second bite at the apple through state court discovery proceedings.

## b.   Massachusetts Civil Rights Statute

The Hospital did not address the merits of plaintiff's federal or state civil rights claims in its motion for summary judgment and instead rested on its argument that, as a private entity, it cannot be held liable in a suit brought under § 1983. The Court is therefore unable to decide on this record whether the Hospital is entitled to summary judgment to the extent that plaintiff's complaint alleges that the Hospital violated his civil rights under the Massachusetts Civil Rights Statute.

The Court therefore instructs the parties that, to the extent that they choose to press dispositive motions under the MCRA, they are to file promptly supporting memoranda specifically addressing the issue of whether the Hospital interfered with or attempted to interfere with plaintiff's exercise or enjoyment of a state or federal right by threats, intimidation or coercion. Currier, 965 N.E.2d at 837-38.

## c.   Medical Malpractice

The Hospital construes plaintiff's medical malpractice claim as arising solely from the Hospital's act of "improperly admitt[ing] him for psychiatric care and treatment" and argues that plaintiff cannot prove the elements of that claim without expert testimony.  Specifically, it contends that he cannot prove the applicable standard of care or that a breach of that standard caused him harm. See Palandjian v. Foster, 842 N.E.2d

916, 920 (Mass. 2006) (citing <u>Harlow</u> v. <u>Chin</u>, 545 N.E.2d 602 (Mass. 1989)).  The Hospital argues that this is not an "exceptional case" where "negligence and harmful results are sufficiently obvious as to lie within common knowledge," <u>see</u> <u>Haggerty</u> v. <u>McCarthy</u>, 181 N.E.2d 562, 565 (Mass. 1962), because

> the standard of care required of physicians, nurses and staff at Brockton Hospital in treating and admitting a patient with complex psychiatric and medical issues is not a matter the jury can determine based upon common experience or knowledge.

The Court agrees that the Hospital is entitled to summary judgment to the extent that plaintiff would require expert testimony to prove his claims based on his diagnosis and treatment for mental health issues.  Furthermore, while the Hospital does not address the claim that it was negligent in treating plaintiff's "wounded heart", plaintiff would require expert testimony to prove that the Hospital committed malpractice in failing to prescribe certain medication for his alleged heart condition or inform him of test results relating to that condition.  The proper treatment of an alleged heart condition in a patient who has been hospitalized for psychosis lies outside of the ken of the average juror. <u>Haggerty</u>, 181 N.E.2d at 565.  As a result, plaintiff's medical malpractice claim will be dismissed in its entirety.

## IV.  **Motion to Quash Keeper of Records Subpoena**

Because discovery has closed, the Hospital's motion to quash plaintiff's keeper of records subpoena will be allowed.

## ORDER

For the foregoing reasons,

1)   the motion for summary judgment of Robert Saquet and the City of Brockton (Docket No. 169) is **ALLOWED** and all claims against those defendants are **DISMISSED;**

2)   the motion for summary judgment of Brockton Hospital (Docket No. 140) is **ALLOWED** and plaintiff's medical malpractice and federal civil rights claims against the Hospital are **DISMISSED;**

3)   to the extent either plaintiff or Brockton Hospital choose to seek summary judgment on any civil rights claim arising under the Massachusetts Civil Rights Act, M.G.L. ch. 12, §§ 11H-11I, they shall submit memoranda in support of such a dispositive motion in compliance with the requirements of Local Rule 56.1 on or before July 8, 2014 and responses will be due on or before July 22, 2014;

4)   Brockton Hospital's motion to quash plaintiff's keeper of records subpoena (Docket No. 202) is **ALLOWED;** and

5)   Brockton Hospital's motion to dismiss for failure to prosecute and to comply with Court Orders (Docket No. 194) is **DENIED WITHOUT PREJUDICE** to renewal if the case is not resolved as a result of dispositive motions.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated June 20, 2014