United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| XINRONG ZHUANG, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 09-12163-NMG |
| R. SAQUET, CITY OF BROCKTON and BROCKTON HOSPITAL, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM & ORDER

**GORTON, J.**

Defendant Brockton Hospital ("defendant" or "the Hospital") moves for summary judgment on the claim by plaintiff Xinrong Zhuang ("plaintiff" or "Zhuang") arising under the Massachusetts Civil Rights Act ("MCRA"), M.G.L. ch. 12, §§ 11H-11I. The Court previously entered summary judgment in favor of the Hospital on plaintiff's federal civil rights claim and state medical malpractice claim and invited the parties to submit dispositive motions with respect to a potential MCRA claim.

### I. Background

On December 22, 2006, the Brockton Police Department responded to plaintiff's residence after plaintiff called 911 and reported that his son was fixing the sink with a knife. Based upon his observations at the scene, Brockton Police Officer Robert Saquet concluded that plaintiff was suffering

-1-

from a mental illness and posed a substantial threat to the physical safety of himself and his family.  Plaintiff resisted attempts by law enforcement officials to restrain him but was eventually placed in handcuffs and transported by ambulance to the Brockton Hospital Emergency Room for evaluation and treatment.  The handcuffs were removed upon his arrival at the emergency room.

An Initial Psychiatric Evaluation report completed by Dr. Alexander I. Lipin ("Dr. Lipin") on December 22, 2006 states that Zhuang was aided by an interpreter and agreed voluntarily to commit himself to the Hospital for treatment.  Specifically, the report states, in relevant part, that

> The patient was interviewed today with the help of an interpreter....  He fully cooperates with the admission process.  Apparently screener in the emergency room believed that patient was committable in courts and called administration to enforce this admission.  The patient reports that he is quite upset himself with this process because he was never offered a Chinese interpreter which he requested, and was never offered any legal advice and was never offered to sign voluntary papers.  When he understood the process of admission, he signed voluntary papers even though he disagreed with the fact that he needs to be an impatient.  The patient stated several times that nothing is wrong with him....  The patient was upset by the admission process; however, he was able to hold his emotions, cooperate for interview....  The patient needs to be assessed further for possible psychotic symptoms.  He likely meets criteria for inpatient psychiatric admission.

Plaintiff claims that he was coerced into signing the voluntary commitment papers.  He states in an affidavit that Dr.

Lipin refused to provide him with an attorney or interpreter to help him read the papers and that, in general, he was not provided with an interpreter until the morning of December 23, 2006. He also avers that Dr. Lipin gave him one minute to decide whether to sign the papers or receive an injection against his will. He adds the following new details which were not included in the previous pleadings in this case:

> a young female was sent over there, the young female said "I need second opinion ...". She was knocked dow (sic) immediately by about three strong male staffs and injected," I knew that I have to sign, otherwise, they will treat me much worse. But I wrote a sentence (sic) under form "I have personal belongs (sic) in front desk." to prove I have clear ind (sic) at that time.

Zhuang states that he signed the papers but did not read or understand their contents.

## II. **Motion for Summary Judgment**

### A. **Summary Judgment Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). "Credibility determinations [and] the weighing of evidence ... are jury functions, not those of a judge." Anderson, 477 U.S. at 255. Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B. Elements of a Claim under the MCRA**

To state a claim under the MCRA, a plaintiff must establish that 1) his exercise or enjoyment of rights secured by the federal or state constitutions or laws 2) has been interfered with, or attempted to be interfered with, and 3) the

interference or attempted interference was by "threats, intimidation, or coercion." Haufler v. Zotos, 845 N.E.2d 322, 335 (Mass. 2006).

Whether conduct constitutes a threat, intimidation or coercion is determined by the court applying the objective standard of a reasonable person. Meuser v. Fed. Express Corp., 564 F.3d 507, 520 (1st Cir. 2009) (citing Haufler, 845 N.E.2d at 335). The Supreme Judicial Court of Massachusetts has defined the relevant terms, for the purpose of the MCRA, as follows:

> a "threat" consists of the "intentional exertion of pressure to make another fearful or apprehensive of injury or harm." "Intimidation" involves "putting in fear for the purpose of compelling or deterring conduct." "Coercion" is the "application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done."

Haufler, 845 N.E.2d at 335 (internal citations omitted); accord Meuser, 564 F.3d at 516. Any such threat, intimidation or coercion must compel the plaintiff to do something he is not lawfully required to do or to refrain from such action. Swanset Dev. Corp. v. City of Taunton, 668 N.E.2d 333, 338 (Mass. 1996).

Unlike federal civil rights actions brought under 42 U.S.C. § 1983, there is no state action requirement and a private person or corporation may be found liable for a violation of the MCRA. Nolan v. CN8, 656 F.3d 71, 76 (1st Cir. 2011) (citing M.G.L. ch. 12, § 11H). Moreover, a plaintiff may state a cause

of action against a private employer based upon a theory of respondeat superior. Sarvis v. Bos. Safe Deposit & Trust Co., 711 N.E.2d 911, 921 (Mass. App. Ct. 1999).

**C. Analysis**

There is no dispute that Zhuang has a "substantial liberty interest in avoiding confinement in a mental hospital." Zinermon v. Burch, 494 U.S. 113, 131 (1990) (collecting cases). That interest was not infringed if plaintiff voluntarily consented to commitment for mental health treatment. Id. at 131 n.17.

The Court cannot determine as a matter of law at this stage whether plaintiff consented voluntarily to his brief commitment for mental health treatment at Brockton Hospital. While the notes from the Initial Psychiatric Evaluation state that Zhuang voluntarily signed the papers authorizing treatment, Zhuang contends that he signed the form only because Dr. Lipin threatened to medicate him if he did not sign it. There is therefore a genuine issue of material fact as to whether Dr. Lipin did, in fact, make such a statement. If a jury believes Zhuang's version of the story, it could find that Dr. Lipin intentionally exerted pressure to make Zhaung apprehend or fear injury or harm by threatening to medicate him if he did not agree to sign the voluntary commitment papers. See Haufler, 845 N.E.2d at 335. Under the circumstances, a jury could also find that the purpose of the threat was to pressure plaintiff into

-6-

giving up his liberty interest in avoiding confinement for mental health treatment at Brockton Hospital. See Zinermon, 494 U.S. at 131.  As a result, it could find the Hospital, as Lipin's employer, liable for violating the MCRA. Sarvis, 711 N.E.2d at 921.

The Court has serious doubts about the veracity of Zhuang's allegations.  Despite extensive motion practice to date, Zhuang now recalls, apparently for the first time, that a "young female" was forcibly administered an injection by Hospital staff in his presence.  He also denies that he had any health problems prior to this incident and yet the record is replete with evidence that Zhuang was injured seriously in a car accident in February, 2006.  Nevertheless, it is not the role of the Court to resolve issues of credibility on summary judgment. Anderson, 477 U.S. at 255.

The Court is, however, concerned that Zhuang's repeated failure to produce requested discovery has severely prejudiced the Hospital in the event that this case proceeds to trial. Zhuang has been warned several times that his continued failure to obey Court orders with respect to discovery could result in dismissal. See Docket Nos. 93, 105.  The Court will therefore reconsider its denial without prejudice of the motion of the Hospital to dismiss for failure to prosecute and to comply with Court Orders (Docket No. 194) and will schedule a hearing on the

matter on Monday, August 11, 2014, at which time plaintiff shall show cause why this case should not be dismissed for his continued, willful failure to comply with orders of this Court. In light of that hearing, the emergency motion to continue the trial, which is scheduled to begin on August 11, 2014, will be allowed.

Finally, the Court will allow the Hospital's motion for an entry of judgment under Fed. R. Civ. P. 54(b) and 58 on plaintiff's federal civil rights and state medical malpractice claims because they were resolved in favor of the Hospital on summary judgment and there is no just reason to delay entry of final judgment.

### ORDER

For the foregoing reasons,

1) the motion for summary judgment by Brockton Hospital (Docket No. 208) is **DENIED**;

2) the motion for entry of judgment under Fed. R. Civ. P. 54(b) by Brockton Hospital (Docket No. 215) is **ALLOWED,** the motion to deny the motion for entry of judgment by plaintiff (Docket No. 221) is **DENIED** and plaintiff's federal civil rights claims and Massachusetts medical malpractice claim against Brockton Hospital are **DISMISSED WITH PREJUDICE**;

3) upon further consideration, the denial without prejudice of the motion to dismiss for failure to prosecute and to comply with Court Orders by Brockton Hospital (Docket No. 194) is **VACATED** and a hearing on the motion is scheduled for Monday, August 11, 2014 at 2:00 p.m. in Courtroom Four, at which time plaintiff shall show cause why this case should not be dismissed for noncompliance with discovery orders; and

4)   the emergency motion to continue trial (Docket No.
         211) is **ALLOWED** and a new trial date will be set at
         the hearing on the motion to dismiss.

**So ordered.**

                                    /s/ Nathaniel M. Gorton
                                    Nathaniel M. Gorton
                                    United States District Judge
Dated August 4, 2014